## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGUERITE DAVIS, in her capacity as Executrix of the Estate of Azalea F. Hinkle and as Administratrix of the Estate of Richard E. Hinkle, and on her own behalf, | : : : : : : | Civil No. 1:24-CV-00632 |
| Plaintiff, | : : | |
| v. | : : | |
| AMCO INSURANCE COMPANY, *et al.*, | : : : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### MEMORANDUM

Before the court is Defendant's motion to dismiss Count I of Plaintiff's complaint. (Doc. 11.) Count I alleges that Defendant denied in bad faith a homeowner's insurance claim in violation of 42 PA. CONS. STAT. § 8371 (1990). (Doc. 1-6, ¶¶ 29–39.) Plaintiff brings this bad faith insurance claim individually and on behalf of her mother's and brother's estates. For the following reasons, the statute of limitations bars the two estates' claims, and Plaintiff individually has no standing to pursue her claim. Therefore, the court will grant Defendant's motion and will dismiss Count I with prejudice.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The central controversy of this case involves the denial of an insurance claim by Defendant, AMCO Insurance Co. ("AMCO"), following a fire at the

insured property, located in York, Pennsylvania.  Azalea Hinkle owned the insured property from about 1950 until her death on September 24, 2012.  (*Id.* ¶ 4.)  Azalea Hinkle's will provided that her estate would be split equally among her two children—Richard Hinkle, her son, and Marguerite Davis ("Davis"), her daughter.  (*Id.* ¶ 8.)  Accordingly, both Richard Hinkle and Davis had ownership interests in the insured property following their mother's death.  (*Id.* ¶ 9.)  Richard Hinkle, who had lived with his mother for a period of time before her death, continued living at the insured property after her death.  (*Id.* ¶ 13.)

During her life, Azalea Hinkle maintained homeowner's insurance on her property through Nationwide and/or its affiliates.  (*See id.* ¶ 7.)  Davis and Richard Hinkle continued to pay for Azalea Hinkle's homeowner's insurance policy even after her death.  (*Id.* ¶ 15.)  Accordingly, AMCO issued a policy on the insured property annually "with little to no changes in the coverage."  (*Id.* ¶ 31.)  2021 was no different.  In March 2021, AMCO issued a policy declaration on the insured property to Azalea Hinkle—nearly nine years after her death—for the period January 31, 2021 to January 31, 2022.  (Doc. 11-1, p. 18.)[1]  This policy had several terms relevant to this matter.[2]  First, the policy required the insured party to

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

[2] Davis attached the policy as an exhibit to her complaint filed in state court.

notify the insurer "of any change which may affect the risk under this policy," including changes to the "title/ownership" or the insured property's "occupancy or use." (Doc. 11-1, p. 26.) Second, the policy would cover a member of the insured's household for a certain period after the insured's death, so long as the household member resided at the insured property. (*Id.* at 75.)

On October 20, 2021, a fire occurred at the insured property while Richard Hinkle was there. (Doc. 1-6, ¶¶ 18–19.) Richard Hinkle died one day later. (*Id.* ¶ 20.) Following the fire, Davis first notified AMCO of her mother's death. (*See* Doc. 16, p. 4). AMCO, in turn, issued a new policy declarations page on November 24, 2021. (Doc. 11-1, pp. 67–69.) The new policy listed the "named insured" as the "Estate of Azalea G Hinkle In Care of Marguerite Davis." (*Id.* at 67.) The policy period was the same as the previous declarations page, January 31, 2021 to January 31, 2022. (*Id.*)

Davis then filed a claim on January 24, 2022 for the fire damage sustained by the insured property. (Doc. 1-6, ¶ 26.) On January 28, 2022, AMCO denied Davis's claim. (Doc. 11-1, p. 72.)[3] AMCO acknowledged that, under the terms of the policy, Richard Hinkle would have been covered under Azalea Hinkle's policy

---

[3] The exhibits to the complaint filed in state court were not filed with the notice of removal. Rather, the complaint's exhibits were first filed as exhibits to Defendant's motion to dismiss. Since the documents were, in fact, exhibits to the original complaint, it is appropriate for the court to consider them in resolving Defendant's motion. *Kendall v. Lancaster Expl. & Dev. Co, LLC*, 323 F. Supp. 3d 664, 670 n. 20 (M.D. Pa. 2018)

for a period of time after her death, but AMCO determined that period had expired before the fire.  (*Id.* at 75.)  AMCO also determined that Davis would not have been covered under the policy following her mother's death, because "she had not resided at the property."  (*Id.*)

About two years later, Davis initiated an action in the Pennsylvania Court of Common Pleas via a writ of summons dated January 29, 2024.  (Doc. 1-3.)  The caption of Davis's praecipe for a writ of summons identified the plaintiff simply as "Marguerite Davis."  (*Id.* at 3.)  So, too, the civil cover sheet accompanying Davis's praecipe listed only "Marguerite Davis" as the plaintiff.  (*Id.* at 2.)  The civil cover sheet also identified the nature of the case as "Insurance, Bad Faith." (*Id.*)  AMCO then filed a praecipe for a rule to file a complaint, using the same caption as the writ of summons.  (Doc. 1-5, p. 2.)

Davis filed her complaint on April 10, 2024.  (Doc. 1-6.)  Unlike the writ of summons, the caption of her complaint identified plaintiff as "MARGUERITE DAVIS, in her Capacity as Executrix of the Estate of AZALEA G. HINKLE and as Administratrix of the Estate of RICHARD E. HINKLE, and on her own behalf." (*Id.* at 3.)  The complaint lodged four claims against AMCO[4]: bad faith by an insurer (Count I); breach of contract (Counts II & III); and unjust enrichment

---

[4] The complaint also named Nationwide Insurance Company as a defendant.  The parties have since filed a stipulation with this court to dismiss Nationwide as a defendant with prejudice, which the court approved.  (Docs. 21, 22.)

4

(Count IV).  (*Id.* at 9–14.)  AMCO removed the state suit to this court shortly thereafter.  (Doc. 1.)  Following removal, Davis and AMCO filed a stipulation to withdraw the breach of contract claims with prejudice, which the court approved. (Docs. 9, 13.)

AMCO then filed a motion to dismiss Davis's bad faith claim pursuant to Federal Rule of Civil Procedure 12(b)(6), along with a brief in support.[5]  (Docs. 11, 12.)  Davis then filed a brief in opposition, to which AMCO responded with a reply brief.  (Docs. 16, 17.)  Thus, the motion is ripe for decision.

JURISDICTION

This court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332, because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[5] AMCO's motion to dismiss does not concern the unjust enrichment count.

5

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012), *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

Federal Rule of Civil Procedure 12(b) lists the defenses that can be asserted by motion rather than in a responsive pleading. A statute-of-limitations defense is not included in Rule 12(b)'s enumeration of defenses. Nevertheless, the law of this Circuit permits a party to raise a limitations defense in a Rule 12(b)(6) motion, but "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F. 3d 241, 249 (3rd Cir. 2014) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3rd Cir. 1975)) (internal quotations omitted). Since whether the statute of limitations bars a claim often involves questions of fact for the jury, *see Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3rd Cir. 1985),

there will only be a basis for dismissal under Rule 12(b)(6) when the complaint makes clear the claim is time-barred.  *Schmidt*, 770 F. 3d at 249.

DISCUSSION

AMCO proffers three reasons why the court should dismiss the bad faith insurance claim: (1) the estates' claims are barred by the statute of limitations; (2) Davis individually has no standing to pursue the bad faith claim; and (3) the complaint fails to allege sufficiently a bad faith claim, because AMCO had a reasonable basis to deny Davis's insurance claim.  (Doc. 12.)  The court finds that the estates' claims are time-barred and Davis lacks standing.  Thus, there is no need to determine whether the complaint sufficiently states a bad faith claim.

### A. The Statute of Limitations Bars the Estates' Claims

Pennsylvania law provides a statutory cause of action for bad faith by insurers.  42 PA. CONS. STAT. § 8371.  To prevail, an insured must show "(1) that the insurer did not have a reasonable basis for denying benefits under the relevant policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim."  *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3rd Cir. 2005).  Here, Davis contends AMCO's "summary denial" of her claim constituted bad faith.  (Doc. 1-6, ¶ 39.)

AMCO argues that the claim brought on behalf of Azalea Hinkle's and Richard Hinkle's estates are time-barred.  AMCO's theory is that Davis cannot

change the capacity in which she sues after the statute of limitations expired on the bad faith claim. (Doc. 12, p. 6–8.) According to AMCO, Davis initiated the lawsuit in her individual capacity, as evidenced by the caption on the writ of summons. Only after the time to bring the claim expired, AMCO posits, did Davis file a complaint with a revised case caption denoting her representative status, which effectively added Azalea Hinkle's and Richard Hinkle's estates as parties. (*Id.*)

Davis argues that adding her representative status to the complaint's case caption was not tantamount to adding new parties to the suit. (Doc. 16, pp. 2–3.) She also argues that she did not need leave to amend the case caption under the Pennsylvania Rules of Civil Procedure, because a writ of summons is not a "pleading" and the amendment rule only applies to pleadings. (*Id.*)

A federal court siting in diversity jurisdiction is bound to apply the statute of limitations that the state court would apply. *Albright v. R.J. Reynolds Tobacco Co.*, 531 F.2d 132, 137 (3rd Cir. 1976) (citing *Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99 (1945)). If the state court would dismiss a claim as time-barred, a federal court must do the same. *Id.* Pennsylvania's bad faith claim has a two-year statute of limitations. *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007). When an insurer continues to deny payment of a claim, the statute of limitations runs when the insured is first provided notice of the insurer's bad faith refusal to pay a

claim.  *See Goddard v. State Farm Mut. Auto. Ins. Co.*, 992 F. Supp. 2d 473, 478 (E.D. Pa. 2014).

Here, AMCO denied Davis's claim on January 28, 2022.  (Doc. 11-1, p. 72.) Davis filed her praecipe for a writ of summons on January 29, 2024.[6]  (Doc. 1-3, p. 3.)  As noted above, the writ gave no indication that Davis was a plaintiff acting in both a representative capacity and an individual capacity.  It simply listed "Marguerite Davis" as plaintiff.  (*Id.*)  Davis then filed a complaint on April 10, 2024—plainly after the statute of limitations ran—that indicated she was suing on behalf of Azalea Hinkle's and Richard Hinkle's estates.  (Doc. 1-6.)

It is well established under Pennsylvania law that adding a new party to a suit following the expiration of the statute of limitations is prohibited.  *Kincy v. Petro*, 2 A.3d 490, 497 (Pa. 2010); *Miller v. Jacobs*, 65 A.2d 362, 365 (Pa. 1949); *Thomas v. Peck*, 181 A. 597, 598 (Pa. 1935).  The question presented here is whether Davis impermissibly added parties after the expiration of the statute of limitations by changing the capacity in which she sued.

AMCO primarily relies on *Blackwood v. Wellspan Health*, No. 2206 MDA 2013, 2014 WL 10915523 (Pa. Super Ct. July 25, 2014).  In *Blackwood*, the plaintiff initiated a wrongful death suit via a writ of summons, which simply listed

---

[6] It ostensibly appears that Davis might have filed her praecipe for a writ of summons one day after the two-year statute of limitations expired.  AMCO does not make this argument in its papers, so the court will not consider it.

his name, "Verol Blackwood," as plaintiff. 2014 WL 10915523, at *7. The caption of Blackwood's later-filed complaint indicated he was suing as a representative of the decedent's estate. *Id.* at *4. Like the instant case, Blackwood did not file his complaint until after the statute of limitations expired. *Id.* at *4. Although Blackwood did not seek leave to amend the case's caption before filing his complaint, he later sought such leave. *See id.* at *5. The trial court denied Plaintiff's motion to amend and dismissed the claims with prejudice on statute-of-limitations grounds. *Id.* at *8.

The *Blackwood* court's reasoning—which the Superior Court adopted in affirming the trial court—mostly focused on distinguishing the case from another trial court case, *Estate of Grouse v. Miller & Norford Inc.*, 42 Pa. D. & C.4th 408 (1999). *Estate of Grouse* involved a case in which a plaintiff initiated a lawsuit in the name of an estate and later sought to include the personal representative to the caption. 42 Pa. D. & C.4th at 413. The *Blackwood* court reasoned that initiating a suit by writ of summons in an individual capacity, when the suit can only be brought on behalf of an estate, provides no notice of the lawsuit's true nature to the defendant. 2014 WL 10915523, at *7. The same is not true when the writ identifies an estate. *See id.* Implicit in the *Blackwood* court's logic is that a plaintiff initiating a suit in an individual capacity when an estate owns the claim undermines the notice function of a writ of summons. *See id.*; *cf. Sayers v.*

*Heritage Valley Med. Grp., Inc.*, 247 A.3d 1155, 1161 (Pa. Super. Ct. 2021) (explaining that a writ of summons tolls a statute of limitations when a plaintiff makes a "good-faith effort to effectuate notice of commencement of the action").

Additionally, the *Blackwood* court relied, in part, on the Pennsylvania Supreme Court's holding in *La Bar v. New York, S. &. W. R. Co.*, 67 A. 413 (Pa. 1907). The *La Bar* court held that amending pleadings to add the plaintiff-widow's capacity as administrator of her husband's estate would impermissibly add a new party after the statute of limitations expired. 67 A. at 414. The *La Bar* court reasoned, "a new cause of action cannot be introduced, or new parties brought in, or a new subject-matter presented, or a vital and material defect in the pleadings be corrected, after the statute of limitations has become a bar." *Id.*

In the instant matter, Davis cites no authority that casts doubt on the applicability of *Blackwood's* and *La Bar's* holdings to this matter. Moreover, the court's independent review of the caselaw did not identify a case in which a plaintiff who individually brought an estate's claim was permitted to add his or her representative capacity after the statute of limitations barred the claim. Rather, the caselaw reviewed by the court indicate that this is generally not permitted. *See Maxson v. McElhinney*, 88 A.2d 747, 749 (Pa. 1952) (amendment of pleadings to make personal representative the plaintiff was not permitted when statute of limitations had become a bar); *Miller*, 65 A.2d at 365 ("[I]t is elementary that a

11

*new party*, or a party *in a different capacity*, cannot be brought on the record after the statute of limitations has become a bar."); *La Bar*, 67 A. at 414; *Blackwood*, 2014 WL 10915523, at \*7; s*ee also Morrison Informatics, Inc. v. Members 1st Fed. Credit Union*, 139 A.3d 1241, 1247 (Pa. 2016) (acknowledging that the Pennsylvania Supreme Court "has taken a hard line relative to . . . scenarios in which plaintiffs have not appeared in the appropriate capacity as required per express statutory commands").

The authority cited above recognizes that a plaintiff acting in an individual capacity is legally not the same as that plaintiff acting as a representative of an estate. This is an especially important distinction considering a plaintiff cannot individually bring a cause of action belonging to an estate. *See Marzella v. King*, 389 A.2d 659, 660–61 (Pa. Super. Ct. 1978) ("It is well settled that all actions that survive a decedent must be brought by or against the personal representative."). In this context, amending pleadings to include an individual plaintiff's representative status would add to a case both a new legal entity—the estate—and claims that the plaintiff previously had no right to assert.

Applying these principles to the present matter, Davis individually had no right under Pennsylvania law to assert the estates' bad faith claims, if any existed; she could only do so as the personal representative of those estates. *Id.* Davis's writ of summons in no way indicated that she was bringing a bad faith claim on

behalf of her mother's or brother's estates.  It was not until after the statute of

limitations expired did Davis attempt to add the estates to the action.  This is

precisely the type of situation contemplated by *La Bar* and its progeny.

Davis's cursory arguments to the contrary are unavailing.  Davis argues that

she did not need to include her representative capacity in the writ of summons and

suggests she could freely add such a designation later.  (*See* Doc. 16, p. 2.)  Davis's

argument is underdeveloped and fails to cite supporting authority.  Also, her

argument is built upon two assumptions: (1) that amending the case caption to

include her representative capacity did not add new parties; and (2) that a party can

unilaterally modify the writ of summons' caption when filing a complaint after the

statute of limitations expired.  The first assumption is groundless for the reasons

explained above.  Caselaw belies the second assumption.  *See Prevish v. Nw. Med.*

*Ctr. Oil City Campus*, 692 A.2d 192, 204 (Pa. Super Ct. 1997) (affirming dismissal

of complaint when writ of summons caption listed an estate as plaintiff and

complaint caption listed executor of the estate as plaintiff); *see also* 1 Charles B.

Gibbons et al., WEST'S PA. FORMS, CIVIL PROCEDURE § 7:0 (2024) ("Once the writ

of summons is filed, all subsequent pleadings take the same docket number and

caption . . . .").

The upshot is that Davis attempted to add Azalea Hinkle's and Richard

Hinkle's estates to the suit after the statute of limitations expired.  Davis makes no

other arguments as to why the statute of limitations should not bar the estates'
claims.  Thus, those estates' claims are time-barred.

### B. Davis has No Standing to Pursue A Bad Faith Claim

Davis also brings a bad faith claim against AMCO in her individual
capacity.  AMCO does not argue that Davis's individual claim is time-barred.
Instead, AMCO argues that Davis has no standing to bring a bad faith claim
because she was never an insured under the policy.  (Doc. 12, p. 10.)  In response,
Davis insists that she can bring a bad faith claim, because as her mother's and
brother's heir, she has an insurable interest in the insured property and is a third-
party beneficiary of the AMCO policy.  (Doc. 16, p. 3–4.)  Davis is wrong.

Pennsylvania's bad faith insurance statute is fundamentally a mechanism for
enforcing the duty of good faith and fair dealing in a contract between insured and
insurers.  *Ash*, 932 A.2d at 882.  It allows remedies for wrongs arising from an
insurance policy contract.  The statute is especially concerned with "the manner by
which an insurer discharge[s] . . . its obligation to pay for a loss in the first party
claim context."  *Id.* (quoting *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 199 (Pa.
2007)).  The statute has limited application.  It "only permits a narrow class of
plaintiffs to pursue the bad faith claim against a narrow class of defendants."  *Id.*
Generally, only an insured or intended third-party beneficiary may bring bad faith
claims.  *See Brighthouse Life Ins. Co. v. Walker-Walton*, No. 22-cv-485, 2024 WL

580876, at *5–6 (E.D. Pa. Feb. 13, 2024); *Elican v. Allstate Ins. Co.*, No. 17-cv-03105, 2017 WL 6525781, at *3 n.8 (E.D. Pa. Dec. 21, 2017); *Atiyeh v. Nat'l Fire Ins. Co of Hartford*, No. 07-cv-04798, 2008 WL 4444253, at *9 (E.D. Pa. Sept. 30, 2008); *Davin v. Davin*, 842 A.2d 469, 473 (Pa. Super. Ct. 2004).

Davis's one-paragraph argument seems to posit that she is a third-party beneficiary of the AMCO policy because she, as an heir, has an interest in the insured property. Yet, Davis fails to explain how her ownership interest is at all relevant to whether she was an intended beneficiary of the policy. She fails even to mention the legal standard for determining whether a party is a third-party beneficiary. *See generally Scarpitti v. Weborg*, 609 A.2d 147, 149–50 (Pa. 1992) (defining the standard for when one becomes a third-party beneficiary to a contract). In any event, having an ownership interest in an insured property does not, alone, make one a third-party beneficiary of the policy. *See Atiyeh*, 2008 WL 4444253, at *9 (finding a building owner lacked standing to bring bad faith claim when he was not a named insured, a third-party beneficiary, or otherwise a party to the policy insuring the building). Davis points to no other facts or law in support of her argument. Thus, the court deems waived any other arguments Davis might have as to why she is a third-party beneficiary of the policy. *See N.J. Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486, 492 n.2 (3rd Cir. 2020) ("As this argument was vaguely presented without factual or legal support, it is

forfeited for lack of development.").  Since Davis is not an insured on AMCO's

policy nor a third-party beneficiary, she has no standing to bring a bad faith claim.

CONCLUSION

For the aforementioned reasons, the court will grant AMCO's motion to

dismiss.  The court will dismiss Count I of the complaint with prejudice. An

appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: October 28, 2024